# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONLEY PRINTING, LLC, a Wisconsin limited liability company, THE GARVEY GROUP LLC, an Illinois limited liability company, TRU-LINE LITHOGRAPHICS, INC., a Wisconsin domestic corporation, and JOHNSON LITHO GRAPHICS OF EAU CLAIRE, LTD., a Wisconsin corporation, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>STORA ENSO NORTH AMERICA CORP, STORA ENSO OYJ, INTERNATIONAL PAPER COMPANY, INC., MEADWESTVACO CORP., NORSKE SKOGINDUSTRIER ASA, NORSKE SKOG NORTH AMERICA, LLC, NORSKE SKOG (USA), INC., UPM-KYMMENE CORPORATION, UPM-KYMENNE, INC., SAPPI LIMITED, S.D. WARREN COMPANY, MYLLYKOSKI CORPORATION, and MADISON INTERNATIONAL SALES COMPANY,<br><br>Defendants. | Case No.<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**JURY TRIAL DEMANDED**<br><br><br><br><br><br><br><br><br><br>**FEBRUARY 14, 2005** |

Plaintiffs Conley Printing, LLC, The Garvey Group LLC, Tru-Line Lithographics, Inc. and Johnson Litho Graphic of Eau Claire, on behalf of themselves and all others similarly situated, bring this class-action complaint against defendants Stora Enso North America Corp., Stora Enso Oyj, International Paper Company, Inc., MeadWestvaco Corp., Norske Skogindustrier ASA, Norske Skog North America, LLC, Norske Skog (USA), Inc., UPM-Kymmene Corporation, UPM-Kymmene, Inc., Sappi Limited, S.D. Warren Company, Myllykoski Corporation, and Madison International Sales Company.   Plaintiffs allege the

following upon information and belief as to all matters except those that relate to the plaintiffs or plaintiffs' own actions:

## NATURE OF THIS ACTION

1.      This case arises out of a conspiracy among all defendants and their co-conspirators with the purpose and effect of fixing prices and committing other unlawful practices designed to artificially raise, maintain or stabilize the prices of magazine paper.  Magazine paper is further described in Paragraph 32 below.  Plaintiffs, on behalf of themselves and the Class described below, bring this action pursuant to Section 4 of the Clayton Act, 15 U.S.C. §15(a).

2.      Plaintiffs seek treble damages, injunctive relief, and attorneys' fees and costs under the antitrust laws of the United States on behalf of themselves and all others similarly situated who purchased magazine paper directly from defendants during the period of January 1, 1993 through May 31, 2004 (the "Class Period").

## THE PARTIES

3.      Plaintiff Conley Printing, LLC, formerly known as Citizen Printing, LLC ("Conley Printing"), is a Wisconsin limited liability company and it has its principal office at 119 Monroe Street, Beaver Dam, Wisconsin 59316.  It was formed in March 1998 as Citizen Printing, LLC and on May 30, 2003 its name was changed to Conley Printing, LLC.  Conley Printing purchases magazine paper directly from one or more of the defendants, or through defendants' entities or controlled affiliates.  In particular, in 2004, Plaintiff Conley Printing, LLC purchased magazine paper from the defendant KPM-Kymenne Inc. which sale was made by UPM-Kymenne Inc. from its North American Sales Office which is located in Carol Stream, Illinois 60132-2593, a suburb of Chicago.  As a result of the conspiracy, Conley Printing has

been injured in its business or property in that the prices it has paid for magazine paper have been artificially raised to anti-competitive levels by defendants and their co-conspirators.

4.      Plaintiff The Garvey Group LLC (the "Garvey Group") is an Illinois limited liability company, with its principal place of business in Niles, Illinois.  The Garvey Group includes the following wholly-owned subsidiary printing companies:  C-Graphic, LLC, is a Delaware limited liability company, qualified in Illinois and Wisconsin, which is located in Milwaukee, Wisconsin; Axios Communications Network, LLC, an Illinois limited liability company located in Niles, Illinois; and Ed. Garvey and Company, an Illinois domestic corporation, which is located in Niles Illinois.  During the Class Period, these wholly-owned printing company subsidiaries of the Garvey Group purchased magazine paper directly from one or more of the defendants, or through one or more of the defendants' entities or controlled affiliates.  As a result of the conspiracy, the Garvey Group has been injured in its business or property in that the prices it has paid for magazine paper have been artificially raised to anti-competitive levels by defendants and their co-conspirators.

5.      Plaintiff Tru-Line Lithographics, Inc. ("Tru-Line") is a Wisconsin domestic corporation located in Sturtevant, Wisconsin.  Tru-Line is a sister company to The Garvey Group companies.  During the Class Period, Tru-Line purchased magazine paper directly from one or more of the defendants, or through one or more of defendants' entities or controlled affiliates. As a result of the conspiracy, Tru-Line has been injured in its business or property in that the prices it has paid for magazine paper have been artificially raised to anti-competitive levels by defendants and their co-conspirators.

6.      Plaintiff Johnson Litho Graphics of Eau Claire, Ltd. ("Johnson") is a Wisconsin corporation located in Eau Claire, Wisconsin.  During the Class Period, Johnson purchased

magazine paper directly from one or more of the defendants, or through one or more of defendants' entities or controlled affiliates.  As a result of the conspiracy, Johnson has been injured in its business or property in that the prices it has paid for magazine paper have been artificially raised to anti-competitive levels by defendants and their co-conspirators.

7.     Defendant Stora Enso North America Corporation ("Stora Enso North America") is a Wisconsin corporation with its principal place of business at Wisconsin Rapids, Wisconsin. Stora Enso North America was engaged in the manufacture and sale of magazine paper in the United States during the Class Period.

8.     Defendant Stora Enso OYJ ("Stora Enso") is a Finnish corporation with its principal place of business at Helsinki, Finland.  Stora Enso, through its subsidiaries or affiliates, was engaged in the manufacture and sale of magazine paper in the United States during the Class Period.

9.     Defendant International Paper ("IP") is a New York corporation with its principal place of business at Stamford, Connecticut.  IP was engaged in the manufacture and sale of magazine paper in the United States during the Class Period.

10.     Defendant MeadWestvaco Corporation ("MeadWestvaco") is a Delaware corporation with its principal place of business at Stamford, Connecticut.  MeadWestvaco was engaged in the manufacture and sale of magazine paper in the United States during the Class Period.

11.     Defendant Norske Skogindustrier ASA ("Norske Skog") is a Norwegian corporation with its principal place of business at Lysaker, Norway.  Norske Skog, through its subsidiaries or affiliates, was engaged in the manufacture and/or sale of magazine paper in the United States during the Class Period.

12.     Defendant Norske Skog North America, LLC ("Norske LLC") is a Delaware limited liability company with its principal place of business at Seattle, Washington, and is owned in part by defendant Norske Skog.  Norske LLC was engaged in the manufacture and/or sale of magazine paper in the United States during the Class Period.

13.     Defendant Norske Skog (USA), Inc. ("Norske USA") is a Delaware corporation with its principal place of business at Southport, Connecticut.  Norske USA was engaged in the manufacture and/or sale of magazine paper in the United States during the Class Period.

14.     Defendant UPM-Kymmene Corporation ("UPM") is a Finnish corporation with its principal place of business at Helsinki, Finland.  UPM, through its subsidiaries or affiliates, was engaged in the manufacture and/or sale of magazine paper in the United States during the Class Period.

15.     Defendant UPM-Kymmene, Inc. ("UPM America") is a New York corporation with its principal place of business at Westmont, Illinois.  UPM America was engaged in the manufacture and/or sale of magazine paper in the United States during the Class Period.

16.     Defendant Sappi Limited, ("Sappi") is a company organized under the laws of the Republic of South Africa with its principal place of business in Johannesburg, South Africa.  In December 1994, Sappi acquired S.D. Warren Company, the market leader in the United States in coated fine paper and a major producer of other specialty paper products.  The S.D. Warren Company now does business as Sappi Fine Paper North America.  Sappi, through its subsidiaries or affiliates, was engaged in the manufacture and sale of magazine paper in the United States during the Class Period.

17.     Defendant S.D. Warren Company ("S.D. Warren"), doing business as Sappi Fine Paper North America, is a corporation organized under the laws of Pennsylvania with its

principal place of business located at Boston, Massachusetts.  In December 1994, Defendant Sappi acquired S.D. Warren, the market leader in the United States in coated fine paper and a major producer of other specialty paper products.  S.D. Warren was engaged in the manufacture and sale of magazine paper in the United States during the Class Period.

18.     Defendant Myllykoski Corporation ("Myllykoski") is organized under the laws of the Republic of Finland with its principal place of business at Helsinki, Finland.  Myllykoski through its subsidiaries or affiliates was engaged in the manufacture and sale of magazine paper in the United States during the Class Period.

19.     Defendant Madison International Sales Company ("Madison") is organized under the laws of Delaware with its principal place of business located at Norwalk, Connecticut. Madison is the U.S. sales company for Myllykoski.  Madison was engaged in the manufacture and sale of magazine paper in the United States during the Class Period.

20.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or entity, it means that the corporation or entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

21.     Various individuals, partnerships, and corporations not named in this complaint have participated as co-conspirators in the violations of law alleged in this complaint, and have performed acts in furtherance thereof.  The identity of all co-conspirators is unknown at this time and will require discovery.

## JURISDICTION AND VENUE

22.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337 and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15(a) and 26.

23.     Venue is proper in this judicial district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§15(a) and 26, and 28 U.S.C. §1391(b), (c) and (d).  Defendants and their co-conspirators have committed acts in furtherance of the conspiracy in this District, and each defendant may be found or transacts business within this District.

24.     This Court has *in personam* jurisdiction over each of the defendants because, *inter alia*, each defendant (a) transacted business throughout the United States, (b) manufactured, sold, shipped and/or delivered substantial quantities of magazine paper throughout the United States, (c) has substantial contacts with the United States and (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons and entities residing in, located in, or doing business throughout the United States.

## CLASS ACTION ALLEGATIONS

25.     Plaintiffs bring this action on behalf of themselves and the members of this class comprising:

> All persons or entities who purchased magazine paper directly from one or more defendants or any predecessor or successor, or controlled subsidiary or affiliate of any defendant in the United States from January 1, 1993 through May 31, 2004 (the "Class Period").  Excluded from the class are defendants, their co-conspirators and their respective parents, subsidiaries and affiliates, and governmental entities.

26.     The number of class members is at least in the hundreds and is so numerous that joinder of all persons is impracticable.

27.     Plaintiffs' claims are typical of other members of the class who likewise sustained antitrust injury and were damaged through defendants' sales of magazine paper at artificially high prices.

28.     Plaintiffs will fairly and adequately protect the interests of the class.  Plaintiffs purchased magazine paper from one or more of the defendants or their controlled subsidiaries or affiliates, and have a common and non-antagonistic interest in recovering damages caused by defendants' unlawful activity and enjoining and deterring future unlawful activity in the magazine paper market.  Plaintiffs' counsel is experienced in antitrust and other complex class-action litigation.

29.     Questions of law and fact common to the class members predominate over questions, if any, that may affect only individual members because defendants have acted on grounds generally applicable to the entire class.  Such generally applicable conduct is inherent in defendants' collusion.  Common questions of law and fact include:

(a)     Whether defendants and others combined, conspired, or contracted to fix prices of magazine paper at artificially high levels, and otherwise restrain trade in the purchase of magazine paper;

(b)     The dates of the formation of this illegal contract or conspiracy;

(c)     The identities of participants in the conspiracy;

(d)     The manner and means of the conspiracy;

(e)     Whether defendants and their co-conspirators fraudulently concealed their conspiracy;

(f)     Whether class members have been damaged by the illegal conspiracy, including the degree to which prices paid by the class were higher than those that would be paid in a market free from collusion; and

(g)     The appropriateness of injunctive relief to restrain future violations.

30.     Class action treatment is superior to other means of prosecuting these claims, as the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication.   Moreover, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication, effort or expense that numerous individual actions would entail.   No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.   The class is readily identifiable and is one for which records exist.

31.     Defendants have acted on grounds generally applicable to the entire class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class.

## TRADE AND COMMERCE

32.     Magazine paper includes, but is not limited to, coated and uncoated magazine paper.   Coated magazine paper is often produced by applying a mixture of clay or carbonate materials and latex to paper during the manufacturing process.   Magazine paper is used to produce mass- and limited-circulation print magazines, advertising inserts and flyers, catalogues and direct mail advertising.

33.     Defendants and their co-conspirators, either directly or through their subsidiaries or affiliates, manufactured, produced and/or sold magazine paper in the United States during the Class Period.

34.     During the Class Period, the conduct of defendants and their co-conspirators has taken place in and affected the interstate and foreign trade and commerce of the United States. The conduct of defendants and their co-conspirators has directly and substantially restrained such trade and commerce.

<u>ALLEGATIONS OF WRONGDOING</u>

35.     Beginning at least as early as January 1, 1993 and continuing until at least through May 31, 2004, the defendants and their co-conspirators engaged in a combination and conspiracy to suppress and eliminate competition which had the effect of raising, maintaining, or stabilizing the price of magazine paper sold in the United States and elsewhere.  The combination and conspiracy engaged in by the defendants and co-conspirators was carried out in the United States and elsewhere.

36.     The alleged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendants and co-conspirators, the substantial terms of which were to allocate markets and customers, limit production and raise, stabilize and maintain prices of magazine paper sold in the United States and elsewhere.

37.     For purposes of forming and carrying out the charged combination and conspiracy, the defendants and co-conspirators did those things that they combined and conspired to do, including, among other things:

(a)     participating in meetings and conversations in the United States and elsewhere to discuss the prices of magazine paper sold in the United States;

(b)      agreeing, during those meetings and conversations, to charge prices at certain levels and otherwise increase or maintain prices of magazine paper sold in the United States and elsewhere;

(c)      discussing and exchanging price quotations to certain customers so as not to undercut the price of a competitor;

(d)      allocating markets and customers; and

(e)      limiting production.

38.      The combination and conspiracy engaged in by the defendants and their co-conspirators as to magazine paper was an unlawful restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. §1).

## MAGAZINE PAPER INVESTIGATION

39.      On May 25, 2004, the European Commission ("EC") and other European antitrust authorities raided the European offices of a number of European, American and South African paper companies.  The EC reported that the raids were coordinated along with the Canadian Competition Bureau ("CCB") and the Antitrust Division of the U.S. Department of Justice ("DOJ").  The raids were related to alleged cartel activity in the magazine paper industry.

40.      On the same day that the EC and Finnish authorities raided a number of its European offices in conjunction with their antitrust probes, defendant Stora Enso disclosed that the company's North American division, defendant Stora Enso North America, Inc., had received a subpoena for documents from the DOJ related to the magazine paper investigation. Also on the same day that the EC and Finnish Authorities raided a number of Stora Enso's European offices, the Associated Press Newswires reported that on May 25, 2004 U.S. Antitrust Division officials had visited Stora Enso North America at its headquarters in Wisconsin Rapids,

Wisconsin.  This Newswire also confirmed that Stora Enso North America received a subpoena for documents from the U.S. Antitrust Division of the U.S. Department of Justice.  Stora Enso North America and its predecessor, Consolidated Papers, Inc., have engaged in communications with its competitors with regard to sensitive, competitive production information.

41.    Press reports announcing the raids also stated that defendant International Paper Company had been contacted by the DOJ in connection with the DOJ investigation.

42.    On June 21, 2004, UPM disclosed in its Form 20-F filed with the Securities and Exchange Commission that the DOJ's Antitrust Division was conducting a criminal investigation into alleged anti-competitive conduct in the magazine paper industry.  UPM also disclosed that the company was cooperating fully with the ongoing DOJ investigation and that it had received conditional full immunity in Europe and Canada.

43.    A number of other magazine paper producers, including defendants Sappi, Ltd. and Myllykoski, have recently disclosed that they were being investigated by the EC and other European antitrust authorities in relation to a probe related to magazine paper.

## EQUITABLE TOLLING

44.    Throughout the Class Period, defendants and their co-conspirators have concealed their unlawful combination and conspiracy from Plaintiffs and the class.  Plaintiffs and other class members had no knowledge of the contract, combination and conspiracy alleged in this Complaint, or any facts that might have led to the discovery thereof, in the exercise of reasonable diligence, until approximately May 31, 2004.

45.    Plaintiffs and other members of the class could not have discovered the contract, combination or conspiracy at an earlier date by the exercise of due diligence at any earlier time because of the deceptive practice and techniques of secrecy employed by defendants and their

co-conspirators to avoid detection of, and conceal, their contract, combination or conspiracy. Moreover, while plaintiffs have diligently sought to protect themselves from unlawful activity, plaintiffs were unable to detect the above-described activity, which by its nature is self-concealing. Accordingly, the statute of limitations has been tolled and suspended with respect to any and all claims arising from the conspiracy until not earlier than May 31, 2004.

## CAUSE OF ACTION

46.     Plaintiffs reallege and incorporate each and every allegation set forth above as if fully written herein.

47.     From a date unknown, but at least from January 1, 1993 and continuing through at least May 31, 2004, defendants and their co-conspirators have combined, conspired and/or contracted to restrain interstate trade in violation of 15 U.S.C. §1.

48.     In furtherance of the unlawful conspiracy, upon information and belief, each of the defendants and their co-conspirators has committed overt acts including, *inter alia*:

(a)     Communicating with co-conspirators regarding prices to be charged for magazine paper;

(b)     Refraining from competition by refusing to offer for sale magazine paper at prices below the agreed-upon fixed prices; and

(c)     Meeting with co-conspirators.

49.     As a direct and proximate result of the conspiracy, defendants have restrained competition in the sale of magazine paper and injured plaintiffs and each class member in their business and property in that they have each paid a higher price for magazine paper than they would have paid absent the concerted unlawful activity.

50.     The conduct of defendants and their co-conspirators constitutes a *per se* violation

of Section 1 of the Sherman Act 15 U.S.C. §1.

## REQUESTS FOR RELIEF

WHEREFORE, plaintiffs, on behalf of themselves and all others similarly situated, respectfully request:

A.    That this Court certify the Class pursuant to Fed. R. Civ. P. 23(b);

B.    That the unlawful combination and conspiracy alleged herein be adjudicated and decreed a *per se* violation under Section 1 of the Sherman Act, 15 U.S.C. §1;

C.    That plaintiffs and the class recover damages against each defendant, jointly and severally, in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. §15(a);

D.    That plaintiffs and the class be awarded their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

E.    That plaintiffs and the class be awarded pre-judgment and post-judgment interest at the highest-legal rate from and after the date of service of this complaint to the extent provided by law;

F.    That this Court permanently enjoin all continuing and future unlawful activity by defendants in violation of the antitrust laws; and

G.    That plaintiffs be awarded such additional relief as the Court may deem proper.

## JURY DEMAND

Pursuant to Fed.R.Civ.P. 38(b), plaintiffs demand a trial by jury on all issues so triable by right.

Respectfully Submitted,

/s/ **David R. Schaefer**                    ,
David R. Schaefer (ct 04334)
BRENNER, SALTZMAN & WALLMAN, LLP
271 Whitney Avenue
New Haven, CT 06507-1746
Tel: (203) 772-2600
Fax: (203) 562-2098
dschaefer@bswlaw.com

**GARDNER CARTON & DOUGLAS LLP**

John T. Cusack
Thomas Campbell
Steven S. Shonder
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Telephone:  (312) 569-1000
Facsimile:  (312) 569-3000

**MUCH SHELIST FREED DENENBERG AMENT & RUBENSTEIN, P.C.**

Steven A. Kanner
Douglas A. Millen
191 North Wacker Drive, Suite 1800
Chicago, IL 60606-1615
Telephone:  (312) 521-2455
Facsimile:  (312) 521-2355

*Attorneys for Plaintiffs*